ib12donH

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
   PATRICK DONOHUE, on behalf of
3  S.J.D., *et al.*,

4                  Plaintiffs,              New York, N.Y.

5          v.                               18 Civ. 9364(DAB)

6  NEW YORK CITY DEPARTMENT OF
   EDUCATION, et al.,
7
                 Defendants.
8  ------------------------------x          Hearing

9                                           November 1, 2018
                                            10:50 a.m.
10
   Before:
11
                      HON. DEBORAH A. BATTS,
12
                                            District Judge
13

14                      APPEARANCES

15 BRAIN INJURY RIGHTS GROUP, LLC
        Attorneys for Plaintiffs
16 BY:  KARL J. ASHANTI
        MOSHE INDIG
17      RALPH M. GERSTEIN

18 ZACHARY W. CARTER
        Corporation Counsel of the City of New York
19 BY:  DAVID S. THAYER
        Assistant Corporation Counsel
20 BARBARA D. UNDERWOOD
        Attorney General of the State of New York
21 BY:  JAMES B. COONEY
        Assistant Attorney General
22
   ALSO PRESENT:
23
   JOSEPH RIVERA JR.
24      Staff Attorney
        Office of the General Counsel
25      Special Education Unit
        New York City Department of Education

ib12donH

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your names

3     for the record, starting with plaintiffs' counsel.

4          MR. ASHANTI:  Yes, Karl Ashanti, from the Brain

5     Injury Rights Group, on behalf of the plaintiff Patrick

6     Donohue.

7          THE COURT:  Is the Brain Injury Rights Group a law

8     firm?

9          MR. ASHANTI:  It is, your Honor, a nonprofit under

10    501(c), a nonprofit firm.

11         THE COURT:  It is a law firm.

12         MR. ASHANTI:  It is a law firm.

13         THE COURT:  Thank you.

14         Let me tell everyone that there are microphones on the

15    table.  Please do not bother to stand to talk.  Those of you

16    who will be talking, use the microphone.  Okay?

17         Beside Mr. Ashanti, we have?

18         MR. INDIG:  Moshe Indig, also from Brain Injury Rights

19    Group, also attorneys for plaintiffs.

20         THE COURT:  And?

21         MR. DONOHUE:  Patrick Donohue, your Honor.

22         MR. GERSTEIN:  Ralph Gerstein, your Honor.

23         THE COURT:  Nice to see all of you.

24         On behalf of the defendants we have?

25         MR. THAYER:  David Thayer, from the New York City Law

ib12donH

1    Department, on behalf of the New York City Department of

2    Education.

3              THE COURT:  And?

4              MR. RIVERA:  Joseph Rivera, Jr., on behalf of the New

5    York City Department of Education.

6              MR. COONEY:  Assistant Attorney General, James B.

7    Cooney, on behalf of the New York State Education Department.

8              THE COURT:  I'm sorry?

9              MR. COONEY:  On behalf of the New York State Education

10   Department.

11             THE COURT:  Thank you.  All right.

12             MR. ASHANTI:  Your Honor, I just wanted to note for

13   the record that, in addition to Mr. Donahue, his daughter, who

14   is a plaintiff, S.J.D., is also in the courtroom in the back.

15             THE COURT:  Thank you.

16             All right.  This is in a very strange posture.  It is

17   not clear that this is ripe for federal court involvement.  If

18   I understand it correctly, the plaintiffs' position is that

19   they have very specific ideas about what would qualify as an

20   open hearing.

21             I get it that the defendants do not agree with their

22   definition of an open hearing.  Is that fair?

23             MR. COONEY:  That is fair, your Honor.

24             MR. THAYER:  Yes, we would agree with that

25   characterization.

ib12donH

1        THE COURT:  What is it exactly that the plaintiffs

2   want in terms of this hearing?

3        MR. ASHANTI:  Yes, your Honor.

4        What we would like, your Honor, is a full hearing to

5   adjudicate the definition and the scope of "open hearing" as it

6   is --

7        THE COURT:  You mean before me?

8        MR. ASHANTI:  Yes, your Honor.

9        THE COURT:  Wait a second.  Why is there a problem

10  with "open hearing" definition?  Where is it defined?

11       MR. ASHANTI:  That is under 34 CFR 300.512(c), your

12  Honor.  It is a federal statutorily guaranteed right to the

13  plaintiff that we are seeking to enforce and vindicate on

14  behalf of the plaintiffs.

15       THE COURT:  Let me ask it another way.  What says what

16  is not an open hearing?

17       MR. ASHANTI:  I'm sorry, your Honor?

18       THE COURT:  In other words, you say you want an open

19  hearing; and if I understand it correctly, you wanted to be

20  able to accommodate hundreds of people and you also wanted to

21  have audiovisual coverage, and I am saying that it is not clear

22  to me that that is what was intended by the term "open

23  hearing."

24       MR. ASHANTI:  Your Honor, that's precisely what we

25  would like to be able to adjudicate before the court.

ib12donH

1          THE COURT:  You can't adjudicate it necessarily.

2          The other problem I am having is, I don't know that

3     you are ready to be here before me.  You know what, let me just

4     hear from Mr. Thayer and Mr. Cooney on that before we proceed.

5          MR. THAYER:  Yes, your Honor.

6          I think that the question of whether or not the

7     plaintiffs are properly before the court is spot on.  We

8     believe that they have not exhausted their administrative

9     remedies.  The complaint and the request for the preliminary

10    injunction refer to phone calls to certain persons and

11    complaints filed with the New York City Office of

12    Administrative Trials and Hearings.

13          And, as I am sure the court is well aware, the

14    exhaustion of administrative remedies in the IDEA world in New

15    York is very clear-cut and straightforward.  If the plaintiffs

16    have an issue with a ruling of an impartial hearing officer,

17    they can take that to the Office of State Review, before a

18    state review officer, who will then adjudicate whether or not

19    those issues are sustainable or are proper, or what have you.

20    And then if they disagree with that determination by the SRO,

21    they can take it to a federal district court.

22          In this case, it is my impression that plaintiffs are

23    alleging that this particular matter is arising under section

24    1415(j) of the IDEA, which deals with pendency determinations.

25    There is some case law that states that an issue with a

ib12donH

1    pendency determination is immediately appealable to a federal

2    district court.

3            But if one goes through the amended complaint and the

4    request for preliminary injunction, it becomes very clear that

5    this case is not about an actual underlying pendency

6    determination.  This is, as your Honor pointed out, about the

7    size of an open hearing and the types of media outlets that are

8    able to enter that open hearing.  And those issues are very

9    much within the power and, excuse me, also the question of

10   whether or not the IHO should recuse himself.  Those issues are

11   well within the power of the SRO to opine upon and would be

12   well within this court's power to opine upon after the SRO has

13   in order to effectuate the statutory balance that the IDEA

14   struck between the federal government's interest in protecting

15   the rights of disabled children and the state's interest in the

16   education of children.  For the court to step in at this

17   juncture would be both premature, and I think would be in

18   excess of its subject-matter jurisdiction.

19           MR. ASHANTI:  Your Honor, if I may?

20           THE COURT:  Mr. Cooney.

21           MR. COONEY:  Yes.  I agree with everything the city

22   says.  I would just add a couple points.

23           I think this is premature in that all -- again, I

24   think your Honor is reading this correctly.  It is what the

25   definition of "open hearing" means.  That's all this is about.

ib12donH

1   And that's not properly before this court.  Because if it was,

2   then the entire system that was just outlined here would run

3   amuck because everybody would be unhappy with the discretionary

4   ruling by an IHO, and they would come running into here and

5   federal courts would then be babysitting every hearing, whether

6   it is on a discretionary determination of whether an IHO should

7   recuse themselves or how big the space is necessary or the

8   audiovisual component.

9          Again, they have been granted an open hearing, as it

10   is understood and as ruled upon in a discretionary ruling by

11   the IHO.  This is not a sealed proceeding.  The only thing not

12   available is a space to accommodate I think 100 to 200 people.

13   I think it can accommodate 30 people, and press are available

14   to go and the parent has exercised his right to waive it being

15   held sealed.  It is publicly done.  That's what he has done.

16          So, and again, it is all hypothetical.  We don't know,

17   and I have not heard, that at the first round of hearings that

18   we had 200 people knocking on the doors demanding to come in.

19   If they can tell us that, then maybe the IHO might say, hmm, I

20   might need a spillover room, just like if in this court right

21   now, we had 200 people beating at the gates of your door and

22   you would say, you know what?  I don't have enough space, but

23   it is under my discretion how I control my courtroom, and maybe

24   you will get the live audio feed into another courtroom where

25   the spillover can happen.  But that's in your discretion

ib12donH

1    because you control your courtroom.

2            So that's essentially what's going on here.  And

3    again, it is all premature.  It is all hypothetical, because we

4    don't know.  And I have not been told that 100 to 200 people

5    have even, again, been demanding to come in.  If they can

6    elucidate on the numbers that came in the first hearing, I

7    think that would be interesting, to me at least.

8            Also, I don't know the media presence.  Do we have --

9    I don't hear the media saying our First Amendment rights are

10   being trammeled on because we can't come in and record.  So I

11   don't know if they actually even have standing on this issue

12   either.

13           Let me just close by reading what Judge Castel has

14   already, I would say, ruled on or found in this issue.  I'm

15   reading from the transcript of October 15, 2018, and I will

16   start off with the quotes.

17           THE COURT:  What page?

18           MR. COONEY:  It is page 31.  I will start with the

19   whole paragraph:

20           "It is the case from reading decisions of a district

21   court in this circuit that it is not uncommon that there is an

22   allegation of a violation of due process or in fact a violation

23   of due process in a hearing before a hearing officer.  The

24   scheme that has been developed provides for review of that.

25   The notion that an aggrieved party, whether it is a parent or

ib12donH

1    the New York City Department of Education, can come into a

2    United States District Court and seek to challenge actions that

3    they expect will take place before a hearing officer before the

4    events have taken place is an improvident way to proceed and

5    contrary to the entire structure set up under the Individuals

6    with Disabilities Education Act.  If an IHO tramples on

7    someone's due process rights, the remedy is to go to the SRO

8    and then to the district courts."

9            I will stop there.

10           THE COURT:  All right.

11           MR. ASHANTI:  Your Honor, if I may?

12           THE COURT:  Yes.

13           MR. ASHANTI:  Just in response, brief response to the

14   A.G.'s office, this -- Judge Castel's opinion was issued before

15   October 16 of this year.  On October 16, there was the first

16   date of this hearing.

17           THE COURT:  Right.

18           MR. ASHANTI:  So at that point, Judge Castel was

19   looking at what might have occurred or might occur in the

20   future, one day later.

21           THE COURT:  Let me just interrupt you.  I'm sorry,

22   Mr. Ashanti.  How many people did show up on October 16?

23           MR. ASHANTI:  In total, your Honor, it had to have

24   been at least 60 to 70, and that was after -- with the

25   understanding that there would not be proper accommodations.

ib12donH

1    We actually -- there were several families who wanted to

2    appear, but it wasn't -- for instance, it wasn't safe for the

3    children of those families, who are similarly disabled as

4    S.J.D. is, to go to the hearing room, which was the problem in

5    the first place.  It did not accommodate the presence of those

6    children.  We were talking about several dozen of --

7              THE COURT:  But this is what I am not understanding.

8    Are the other children parties to this?

9              MR. ASHANTI:  They are not parties, but they are

10   members of the public and their families are similarly situated

11   to the plaintiff.

12             THE COURT:  I understand that.  But this is the

13   difficulty.  Are you saying that the procedural due process

14   requires that everyone who wants to be present can be present?

15             MR. ASHANTI:  No, your Honor.  But we would like to

16   have a proper adjudication of what the scope means, because it

17   is, you know, contrary to the flippant way in which the defense

18   has looked at the idea of an open hearing, it is a federally

19   guaranteed statutory right.

20             THE COURT:  It is a federally guaranteed right.  I'm

21   not arguing that you have a right to an open hearing.

22             MR. ASHANTI:  Correct, your Honor.

23             THE COURT:  The question is, what is an open hearing?

24             MR. ASHANTI:  And that's exactly what we would like to

25   adjudicate.  We do have a very, you know, specific opinion as

ib12donH

1    to what that is and --

2            THE COURT:  But what is it based on?  What is your

3    opinion based on?  Is there law supporting your opinion?

4            MR. ASHANTI:  Well, your Honor, this is a matter of

5    first impression in that this is the first --

6            THE COURT:  And you know why this is a matter of first

7    impression?

8            MR. ASHANTI:  I do know why, and that is because no

9    other plaintiff who has been in the position of the plaintiffs

10   here, a disabled child seeking to vindicate his or her

11   educational rights before the New York City Board of Education,

12   has sought an open hearing.  So this is a right that has been

13   sitting on the books, your Honor, --

14           THE COURT:  I am not --

15           MR. ASHANTI:  -- collecting dust --

16           THE COURT:  I'm not exactly sure that you are saying

17   that you are not, you are saying you are not getting an open

18   hearing unless what?

19           MR. ASHANTI:  Unless there is access to audiovisual

20   media, unless there is access to --

21           THE COURT:  Who is defining that?  Where are you

22   getting that?

23           MR. ASHANTI:  Your Honor, that's the public.  There is

24   a strong public interest in this matter in that the public

25   should be able to -- if you look on YouTube for instance, any

ib12donH

1   person who is similarly situated to the plaintiffs here, who

2   are trying to get the information about what this -- these

3   impartial hearings are about, they are not able to because it

4   doesn't exist, because they -- this is a matter where only

5   the -- these plaintiffs have been the only ones who really

6   sought to vindicate those rights, who really sought to enforce

7   those rights.

8          THE COURT:  Then this might be a novelty.  Maybe no

9   one else wants this.  Is this a "one off" thing that I have to

10  spend my time trying to adjudicate on a record that doesn't

11  exist yet?

12         MR. ASHANTI:  No, your Honor, because it is something

13  that -- it is really -- most people don't know about.  And

14  that's the whole idea.  It is -- these are -- these impartial

15  hearings affect over 200,000 New York City school children who

16  are disabled who are seeking special education services, and

17  that's just in the City of New York.  This is -- this is a

18  nationwide issue.  But these families don't know that they have

19  this right, your Honor.

20         THE COURT:  But any --

21         MR. ASHANTI:  It is not as though they have been

22  battling the DOE and they have been losing this fight.  This is

23  a fight that they haven't taken on because they don't know that

24  they have this right.

25         MR. COONEY:  May I address, just getting back to real

ib12donH

1   world principles, James Cooney here, there is a right to open

2   courts, but you don't allow video cameras.  I believe that is

3   the case both -- it is the initial ruling in state courts and

4   federal courts, as I understand it, with exceptions probably.

5            THE COURT:  I'm sorry.  Would you say that again?

6            MR. COONEY:  That there is a rule within federal and

7   state courts that there are no video cameras in courts,

8   unless --

9            THE COURT:  Well, there is actually a prohibition in

10  federal court.

11           MR. COONEY:  Yes.  In state courts, if it is a federal

12  criminal trial, where evidence is going to be taken and you

13  have witnesses, as I understand it, that also there is a

14  prohibition under the civil rights law.

15           This is akin to saying that, because it is public,

16  members of the press can come in and they can take notes, they

17  can do whatever.  The only thing is the audiovisual component.

18  People of the public can come in.  They can take notes.  They

19  can hear this.  They can see it.

20           All plaintiff seems to be saying is that you, this

21  court, who is --

22           THE COURT:  On this record.

23           MR. THAYER:  -- on this record, whose specialty is not

24  this, decide this --

25           THE COURT:  Wait a minute.  I'm a generalist.  I don't

ib12donH

1    have specialties.

2         MR. COONEY:  What I'm trying to -- with all due

3    respect, I'm not trying to disrespect your Honor.  I'm saying

4    that, again, this is a case that should go follow the

5    parameters precisely for these reasons, because this is a first

6    impression type of case.  So if they don't like the ruling by

7    the IHO, go to the SRO and let them adjudicate that in the

8    normal course.  Because, again, they are specialists on this.

9    Then if you don't like that, brief that, bring an appeal, then

10   you come to the district court.  If they don't like that, they

11   can appeal that to the Supreme Court.

12         THE COURT:  Well, they probably should go to the

13   circuit first.

14         MR. COONEY:  The circuit.  I'm sorry.  I'm sorry.  But

15   there is -- to go directly now to you, again, on no record in

16   this hypothetical land doesn't make sense.

17         I am going back to something else that he said.  There

18   are a lot of people that are interested in the criminal justice

19   system that maybe don't know that courts are open or in the

20   civil court system that courts are open.  That doesn't mean

21   that you should be videotaping or allowing videotaping here so

22   it can go on YouTube so people can see that might be civil

23   litigants later on to see what the civil litigation process is.

24   Because that's literally what they are saying.

25         THE COURT:  Yeah.

ib12donH

1            MR. ASHANTI:  Your Honor, just very briefly, there has

2      been mischaracterization of what the plaintiffs -- we are the

3      best people to inform your Honor as to what our claims are

4      here.  This is not a hypothetical.  We are talking about real

5      individuals.  S.J.D. is in the back room -- in the back of this

6      courtroom, your Honor.  She is a real person, she has real

7      rights, and we are seeking to enforce those rights.

8            THE COURT:  But you are saying her rights include

9      having anybody else in there who wants to be in there?  That's

10     her right?

11           MR. ASHANTI:  No, your Honor.

12           THE COURT:  You have about 16 --

13           MR. ASHANTI:  No.

14           THE COURT:  -- different arguments, and I'm trying to

15     figure out --

16           (Discussion off the record between the court reporter

17     and counsel)

18           MR. ASHANTI:  No, your Honor.  Were you finished?

19           THE COURT:  No.  I will let you go.

20           MR. ASHANTI:  Thank you.

21           It is not -- we are not seeking a free-for-all, your

22     Honor.  And the most important part --

23           THE COURT:  I didn't say a free-for-all.  I'm asking

24     whose rights are you seeking to vindicate?

25           MR. ASHANTI:  Technically they are the rights of the

ib12donH

1    parent.  Under the federal statute that we are citing, the

2    rights of the parent as looking out for the interest of the

3    child, the disabled child in this instance.

4            THE COURT:  To ask for an open hearing.

5            MR. ASHANTI:  To ask for an open hearing.  And he is

6    seeking to enforce his rights in that regard on behalf of his

7    daughter.

8            And there is a very important point, your Honor, if I

9    may please make it.  This is not about -- this is not

10   premature.  This is not something that can be appealed.  We are

11   seeking --

12           THE COURT:  Why not?

13           MR. ASHANTI:  We are seeking emergent relief, your

14   Honor, and that ties into the exhaustion issue, when this has

15   been fully exhausted.

16           THE COURT:  I don't understand how it has been fully

17   exhaust.

18           MR. DONOHUE:  Because there is no mechanism for

19   emergent relief under the SRO system.  There has been continual

20   reference by the A.G.'s office and by the city to the appeal

21   system, you can appeal to the SRO, and take care of it that

22   way.  That's not true, your Honor.  That's not correct.  That's

23   false information.  There is no appeal mechanism -- excuse me,

24   emergent relief mechanism under the SRO.

25           THE COURT:  What is the word you are using?

ib12donH

1            MR. ASHANTI:  Emergent relief.

2            THE COURT:  Emergent?

3            MR. ASHANTI:  Yes, like immediate relief.  They don't

4    have -- for the kind of relief that we are seeking here,

5    preliminary injunction, your Honor.  They don't have that

6    mechanism within that SRO system, "SRO" meaning state review

7    office.  They don't have that within that system.  So we have

8    exhausted the remedies with respect to emergent relief for the

9    vindication of these rights.  This is something that is a real

10   live controversy.  The plaintiffs here go back to court on

11   December 4, your Honor.  So this is something that is very much

12   live.  And without the relief that's being sought here, there

13   will be a missed opportunity.  What we are really seeking here

14   is the vindication of the rights, but as a means to protect the

15   legacy of S.J.D.  There is strong public interest in this, your

16   Honor.  From the time that she was born, you know, two weeks

17   after --

18            THE COURT:  Listen.  I don't want to hear that.  That

19   has nothing to do with what I am dealing with right now.  I am

20   sure that there is a public interest in this.  I just --

21            MR. ASHANTI:  Yes, your Honor.  So that's one of the

22   standards that we have to meet, the prongs that we have to meet

23   for the preliminary injunction that we are seeking.  It is not

24   a standard run-of-the-mill case that would end up being

25   appealed to the SRO, like I was mentioning, because we have

ib12donH

1   exhausted the remedies, because they don't have a mechanism for

2   emergent relief.

3           THE COURT:  I don't --

4           MR. ASHANTI:  And there has been no --

5           THE COURT:  -- see why you need preliminary injunction

6   relief.  I don't see why we need to go that route since you are

7   asking me to make decisions on hypotheticals, what might

8   happen, what could be --

9           MR. ASHANTI:  This is -- your Honor, with all due

10  respect, this is not a hypothetical.  We went to the first date

11  of the hearing on October 16, and there was rulings made by the

12  IHO that were discriminatory.

13          THE COURT:  Well, they may be discriminatory but at

14  this point they are discretionary, and you are asking me to

15  come --

16          MR. ASHANTI:  Well, that --

17          THE COURT:  -- back and say, oh, no, you --

18          MR. ASHANTI:  This --

19          THE COURT:  -- can't that.

20          Do not talk over me.

21          MR. ASHANTI:  I apologize, your Honor.  I apologize.

22          THE COURT:  If it turns out that there is a record

23  that is developed and you go to the SRO because you don't like

24  the rulings made, the actual rulings made by the IHO, then it

25  seems to me that you are giving a basis for someone to

ib12donH

1    determine on these facts it was open, it wasn't open.  But what

2    I am saying to you is that there is nothing here that would

3    permit me to say, oh, yeah, what he did was wrong.

4           MR. ASHANTI:  Your Honor, I am holding in my hand a

5    transcript of the proceedings.

6           THE COURT:  I haven't --

7           MR. ASHANTI:  We have a record, your Honor.  This

8    is -- the record is in my hand.  We know what happened.  We

9    know it is going to continue to happen.  This is something that

10   is -- and it is not moot.  It is not premature.  This is

11   something that is capable of repetition.

12          MR. COONEY:  Again, I --

13          MR. ASHANTI:  Excuse me.

14          We are going back to court on December 4.  We were in

15   court already on October 16.  I have the transcript of the

16   proceedings.  This is an ongoing controversy.  There is nothing

17   about this that is hypothetical, your Honor.

18          THE COURT:  But what I am saying is that it is not

19   clear to me that what you have is a sufficient basis to bring

20   emergent relief for not having this go forward.  With a unique

21   question, with no record, with no background, you expect a

22   ruling from the federal court.

23          MR. ASHANTI:  Well, we satisfied the prongs, your

24   Honor.

25          THE COURT:  How?

ib12donH

1          MR. ASHANTI:  Because we have likelihood of success on

2     the merits.

3          THE COURT:  Oh, you do?

4          MR. ASHANTI:  Yes, we do, because of the statements

5     that were made by the IHO.

6          THE COURT:  Wait.  You have likelihood of success on

7     the merits in terms of having the IHO overruled?  Is that what

8     you are saying?

9          MR. ASHANTI:  No, your Honor, in terms of the fact

10    that he denied the access to the audiovisual media and stating

11    flatly, oh, well, there will be no audio recording.  That was

12    one of the rulings that he made.

13         THE COURT:  I --

14         MR. ASHANTI:  And then still -- I apologize, your

15    Honor.  I apologize.

16         THE COURT:  He said that was a ruling, there will be

17    no audio, there will be no video?  What did he say.

18         MR. ASHANTI:  That is correct, your Honor.  But yet

19    and still --

20         THE COURT:  But where is the right to have

21    audiovisual?  You have a right to have the public present.  You

22    don't have the right to have the public present in a certain

23    way at a certain number.  At some point, it may be if you want

24    to hold this in Giants Stadium so that everybody can be

25    accommodated that's one thing, but I do not think that there is

ib12donH

1    a due process right to do that.

2              MR. ASHANTI:  Your Honor, for instance, I just wanted

3    to make it -- make it as real as possible.  What happened on

4    October 16 was the IHO stated that he was denying the access to

5    the audiovisual media of the proceeding because it would be

6    embarrassing to have S.J.D., as a disabled child, in front of

7    the camera; that it would be bordering on child abuse, your

8    Honor.  These are the bases that he used.  All of them were

9    discriminatory.

10             THE COURT:  Whoa, whoa, whoa.

11             MR. ASHANTI:  He threatened --

12             THE COURT:  You can put a conclusory label on just

13   about anything.  Why do you say that was discriminatory?

14             MR. ASHANTI:  Because he said that the reason he is

15   denying access to the audiovisual media, that he would not

16   videotape the proceedings, because it would be embarrassing to

17   have her on camera.

18             THE COURT:  Does he have the ability to do that, to

19   put it on audiovisual?  Is it within the means of the IHO to do

20   that?

21             MR. ASHANTI:  Yes, your Honor.  That's actually part

22   of the whole problem because --

23             THE COURT:  Has this been done in the past?

24             MR. ASHANTI:  They are routinely audio recorded.  So

25   he said you can't have audio recording.  Yet and still --

ib12donH

1              THE COURT:  Who audio records it?

2              MR. ASHANTI:  The transcriber, your Honor.  There is a

3       court reporter.

4              THE COURT:  So there is a court reporter making a

5       record of what's going on.

6              MR. ASHANTI:  Using audio, an audio recording for that

7       purpose.

8              THE COURT:  All right.  So that there is a record, for

9       anybody who is interested in it, to see verbatim what was said.

10             MR. ASHANTI:  A transcript, your Honor, is not the

11      same, as I'm sure the court knows, as actually seeing the

12      proceedings, actually understanding --

13             THE COURT:  I think this is too ephemeral for me to

14      say that a transcript is not sufficient.  Did he say that

15      reporters could not be present?

16             MR. ASHANTI:  He stated that there could only be print

17      media, and not the visual media.

18             THE COURT:  Yeah.  Well, you know something?  This is

19      a very, very sort of generational problem.  In the past, people

20      who were interested could show up if it was public.  In the

21      past, people could read about it after the fact.  But you are

22      saying that it is a due process right to have people there

23      right there when it is going on to support the plaintiff?  Is

24      that what you are saying?

25             MR. ASHANTI:  Even if they are not, you know,

ib12donH

physically present, because obviously if there is a video
recording of it, people who watch it later wouldn't be
physically present.  That is what it would mean to have access
to the public.  So there would be certain amounts of people
who, you know, are able to attend personally, in person, and we
have some of them here in this courtroom, your Honor, who can
attest to the discriminatory language and rulings of IHO Lloyd.

THE COURT:  But this is my problem, Mr. Ashanti.  I am
not going to create a precedent whereby every time any
discretionary ruling is made by an officer or a court that it
is a basis for coming into another court and having it
overruled.  That is not appropriate.  There is a process that
it should go through, there is a ruling, a finding by the IHO.
There is an appeal to the SRO.  The SRO makes a record.  There
is something for a federal court to see in terms of whether it
was an open hearing.

MR. ASHANTI:  Understood, your Honor.  But, again, we
are talking about something that would cause irreparable harm
if it's --

THE COURT:  How is it irreparable harm?

MR. ASHANTI:  Because that opportunity would be
missed.

THE COURT:  Whose opportunity?  The public?

MR. ASHANTI:  The public, but really the right of the
plaintiff to have an open hearing.  So if he --

ib12donH

1          THE COURT:  No, no.  Please.  I am tired of going in

2     circles.  You don't like the definition of the open hearing

3     that provides a transcript, that provides print media being

4     present, that provides people who can come in to come in.  You

5     don't think that's an open meeting --

6          MR. ASHANTI:  Not sufficiently because --

7          THE COURT:  -- or open hearing.

8          MR. ASHANTI:  -- it is the right of the plaintiff,

9     your Honor.

10          But beyond that, I want to make one point on that

11     really, on this.  There is discretion by an IHO, but IHO, no

12     individual who was in a position of authority, has the right to

13     make as his or her basis the rulings that a person makes, in

14     this case an IHO, be based on discriminatory grounds.  That is

15     not within the realm of discretion.

16          THE COURT:  And discriminatory grounds are what here?

17          MR. ASHANTI:  The IHO specifically stated, and we have

18     the transcript, your Honor, we can give your Honor a copy of

19     it.

20          MR. COONEY:  May I, for a second?

21          MR. ASHANTI:  Excuse me, your Honor.  Excuse me.

22     Excuse me.  Excuse me.

23          MR. COONEY:  This is the first time I have even heard

24     of a transcript --

25          THE COURT:  Yes.

ib12donH

1          MR. COONEY:  -- of discriminatory intent.

2          MR. ASHANTI:  Right.  Okay.

3          So, your Honor, we have a transcript.  We have the --

4    obviously the DOE has access to it as well.  I'm sure the

5    A.G.'s office does, as well.

6          MR. COONEY:  I do not.  It is the first time I have

7    ever heard of this right now.

8          MR. ASHANTI:  I have no control over that.  But the

9    point is --

10         MR. COONEY:  You could have put it in your papers.

11         MR. ASHANTI:  They are not in the papers, your Honor.

12   We just received a copy yesterday.

13         But the point is, the transcript shows that the

14   rulings that were made regarding these issues, the audiovisual

15   presence, the audiovisual media being allowed access and in

16   this case denied access was specifically because the IHO felt

17   that it would border on child abuse to have a disabled child on

18   camera.  He actually threatened the plaintiff, who has cared

19   for his daughter beyond, you know, all reasonable means that

20   you would see a normal parent normally would take, threatened

21   this plaintiff with a guardian ad litemship, saying he would

22   take away the ability of this parent to advocate for his own

23   child and appoint a *guardian ad litem* just because he disagreed

24   with the rulings and felt that S.J.D. was owed an apology for

25   suggesting stating -- flatly stating, actually, that it would

ib12donH

1    be abusive and embarrassing to have her on camera just because

2    she is a disabled child.  That is wrong, your Honor.

3             THE COURT:  That may be wrong.

4             MR. ASHANTI:  That is discriminatory.

5             THE COURT:  That may be wrong.  It is not

6    discriminatory to the point where it comes to me at this point.

7    I am sorry.  I do not agree with you.  Every time he says

8    something wrong, you don't like it, you come back here?  No.

9             MR. ASHANTI:  I agree, your Honor.  But we are not

10   talking just about any ruling.  We are talking about something

11   that is a federally guaranteed right for this plaintiff.

12            THE COURT:  What I am trying to get across to you is

13   that a transcript, press being permitted in, the public who can

14   get in being permitted in, I do not see anything that suggests

15   you have a right to more than that.

16            MR. COONEY:  May I interrupt also, your Honor?  I am

17   kind of surprised, and if this is true, that plaintiffs'

18   counsel has not disclosed to the court a change in circumstance

19   actually beneficial to them.  As I understand it from the city,

20   which, again, I just learned this morning as I came in, the

21   forum has now changed to -- and I will let the city take over

22   on this.

23            MR. THAYER:  Brooklyn Borough Hall's ceremonial

24   courtroom.

25            MR. COONEY:  It's actually been enlarged, which they

ib12donH

1    haven't even mentioned.  So this shows the bad faith, I

2    believe, where they are not even telling your Honor the full

3    story here.

4              MR. ASHANTI:  That is improper, your Honor.  That

5    suggestion that there is any bad faith is improper.

6              The point being, your Honor --

7              THE COURT:  No, no.  But respond to him.  How does he

8    know and you don't know that it's been moved to the ceremonial

9    courtroom in --

10             MR. COONEY:  I was just advised by the city.

11             THE COURT:  -- Borough Hall?

12             MR. THAYER:  Yes.

13             THE COURT:  One at a time.

14             MR. ASHANTI:  Your Honor --

15             THE COURT:  Wait.  Here are the rules.  The court

16   reporter can only record one person at a time.  And if that one

17   person happens to be me, anything else you are saying does not

18   get recorded.  And I am sure that you want what you are saying

19   recorded.  So let's go one at a time.

20             Let me hear from the city in terms of the change of

21   venue.

22             MR. THAYER:  Yes, your Honor.

23             It came to my knowledge yesterday afternoon that the

24   new venue for the next scheduled hearing date for December 4 is

25   going to be held on -- held at the Brooklyn Borough Hall

ib12donH

1  courtroom.  It has been relayed to me that that can accommodate

2  around 180 people seated and more, if seats are removed.  I

3  haven't seen the courtroom myself, so I'm not sure of the

4  layout.  But insofar as plaintiffs want greater attendance, it

5  is there.

6       I think the irreparable harm that plaintiffs are

7  talking about is -- remains speculative.  We don't know how

8  many people will show up, but although there is space to

9  accommodate a greater number.

10      MR. ASHANTI:  And, your Honor, I would just point out

11  that that is actually a concession that is in our favor.  That

12  supports our position of our definition of an open hearing,

13  that there would be that concession by the city.  So we are

14  moving towards the plaintiffs' definition --

15      THE COURT:  No, no.

16      MR. ASHANTI:  -- of what an open hearing is and what

17  he --

18      THE COURT:  I have no basis for agreeing with you or

19  agreeing with them.  This is something that has not been

20  adjudicated before.  And on the record before me now, it is not

21  appropriate to adjudicate it because there is nothing before me

22  except complaints about rulings that have been made

23  preliminarily.  I am not going to adopt the position that any

24  time any hearing officer says anything that anybody doesn't

25  like, that that is a basis to come in to federal court.

ib12donH

1        MR. ASHANTI:  Well, your Honor, I would just point out

2   that it is really curious that the city at this juncture has,

3   number one, consented to the larger venue and did not object,

4   has not objected, stated affirmatively that they do not object

5   either to the recusal of IHO Lloyd, because they were present

6   for his discriminatory actions against S.J.D. and Patrick

7   Donahue, and they also do not object to the video recording.

8   So we are here in a situation --

9        THE COURT:  If there is going to be no objection to it

10  and it takes place, what are you here before me for?

11       MR. ASHANTI:  Exactly, your Honor, because the

12  obstacle is IHO Lloyd and his rulings.

13       THE COURT:  And you want me to tell him to recuse

14  himself or throw him off?

15       MR. ASHANTI:  Not recuse, your Honor.  I was just

16  pointing that out as a matter of saying that the DOE

17  understands the discriminatory nature of his actions on October

18  16.

19       MR. THAYER:  Your Honor --

20       MR. COONEY:  I object.

21       THE COURT:  Just a second.  That's enough.  Please.

22       MR. THAYER:  Your Honor, I really take issue with the

23  characterization of the DOE's position here.  The DOE is not

24  obliged to consent to every request of an opposing litigant in

25  an adversarial process, first of all.

ib12donH

1          Second of all, the provision of the larger courthouse

2     is not a concession that plaintiffs are legally entitled to an

3     open hearing in a room of any size.

4          And there was one other point that, I'm sorry, your

5     Honor, I lost it.

6          MR. ASHANTI:  But it certainly doesn't militate

7     against our position that there is a likelihood of success on

8     the merits.  If anything, it militates in favor of it, your

9     Honor.

10          THE COURT:  Just, look, Mr. Ashanti --

11          MR. ASHANTI:  Yes, your Honor.

12          THE COURT:  -- I have read your papers --

13          MR. ASHANTI:  Yes, your Honor.

14          THE COURT:  -- and I have looked at the transcripts

15     before the two federal judges who have heard this already.  You

16     were not granted a TRO.  This is a hearing for a preliminary

17     injunction.  The standards require that there is probability of

18     success on the merits, and the success that you want is to have

19     this court determine, identify, and specify what the definition

20     of an open hearing is based on nothing.

21          MR. ASHANTI:  Well, your Honor, I would just point

22     out, without that, it is just on paper.  This right is

23     meaningless without any sort of enforcement mechanism.  If we

24     don't have the right to come to court and have this emergent

25     relief granted, your Honor, if we don't have the right to say,

ib12donH

| | |
|---|---|
| 1 | okay, we know what's been happening because this is what |
| 2 | occurred already, it's not hypothetical, this is what happened |
| 3 | on October 16, we are going back on December 4, this is going |
| 4 | to keep happening, there is going to be these denial of access |
| 5 | of the audiovisual media, and that is something -- |
| 6 | THE COURT:  Listen.  I don't understand.  You expect |
| 7 | me as a federal court to say that they have to provide for all, |
| 8 | going forward.  Understand, this isn't just to this case.  This |
| 9 | is setting precedent.  And you want me to say that every |
| 10 | hearing where the parent is okay with it has to have |
| 11 | audiovisual recording as well as stenographic recording as well |
| 12 | as print media there?  I am not ready to say that.  I don't |
| 13 | think that you can provide evidence that you will succeed in |
| 14 | getting me or any court to say that, by right, you have to have |
| 15 | all of these things. |
| 16 | MR. ASHANTI:  Well, your Honor, it is for one reason |
| 17 | only.  It is the parent's decision. |
| 18 | THE COURT:  It is the parent's decision to have an |
| 19 | open hearing.  The parent does not -- |
| 20 | MR. ASHANTI:  To -- |
| 21 | THE COURT:  The parent does not get to define what an |
| 22 | open hearing is and if they don't get what they want, then they |
| 23 | go to court. |
| 24 | MR. ASHANTI:  But the -- |
| 25 | THE COURT:  No "but." |

ib12donH

1          MR. ASHANTI:  Your Honor, the whole idea, though, is

2     the -- of the rights of the disabled child in seeking to

3     vindicate his or her educational rights, and the parent -- the

4     parent stands in the place of looking over those decisions on

5     behalf of that child.  And so in asserting this right, it is

6     our position that it is in Mr. Donohue's purview to say whether

7     or not his daughter can be put on camera.

8          THE COURT:  Okay.  I am not --

9          MR. ASHANTI:  That that is not child abuse.

10          THE COURT:  -- going into that.  I am not going into

11     that.  Okay.  That's one thing that was done.  So the next

12     hearing, several other things are going to be done, and each

13     time you are going to come back here and say that due process

14     has been ignored because the judge ruled this way in an ongoing

15     proceeding?

16          MR. ASHANTI:  This is just one -- this is it, your

17     Honor.  This is -- we have been consistent from the beginning.

18     It is 34 CFR 300.512(c).  That is what we are asserting.  I

19     have copies of that provision, your Honor.  We are not

20     asserting any other rights in this area.  Of course that -- we

21     are saying that it touches upon the fact that there should be

22     access to the -- for the media, for audiovisual media.  We are

23     saying -- but all of that is within the scope of Mr. Donohue's

24     assertion of that right under that one singular provision.  So

25     it is not something where we will be coming back to court after

ib12donH

1    ever hearing, your Honor.  We certainly wouldn't be doing that.

2    This is a discreet issue, your Honor.

3            (Pause)

4            MR. ASHANTI:  I have copies of the provision if you

5    would like, your Honor.

6            MR. THAYER:  Your Honor, there is one additional thing

7    that I would like to add because we have been discussing the

8    audiovisual media and the decisions of the IHO or the allegedly

9    biased or improper decisions of the IHO.

10           The first point in the city's brief points out that

11   the IHO is not a city employee, and to the extent that the

12   plaintiffs have issues with a particular decision about

13   language that the IHO made in a particular hearing, the city

14   has no control.  Even if the court were to grant an injunction,

15   the city has no control over the IHO with regards to his

16   discretionary decisions or his language.

17           (Pause)

18           MR. ASHANTI:  And, your Honor, I would just like to

19   point out, in response to the city stating that they don't have

20   power over the IHO, well, that's precisely why the Attorney

21   General's office is also a defendant here.  And we are not

22   seeking a ruling from the city, your Honor.  We are seeking a

23   ruling from this court, which does have the power to grant the

24   emergent relief that is not -- plaintiffs do not have under the

25   SRO system.

ib12donH

1     THE COURT:  I understand.  But my problem is that I do

2     not think that you will succeed on the merits.  I don't think

3     that you have a right to the emergent relief that you want for

4     me to define specifically that they have to give you everything

5     that you want and otherwise it is not an open hearing.

6     MR. ASHANTI:  Well, what would it mean to be open to

7     the public if the public cannot have access to it, your Honor?

8     Even if it were --

9     THE COURT:  The public can have access.  It doesn't

10    say immediate access.  The only time I see anything about open

11    hearing is in 8 NYCRR 200.5(x) which defines, "The hearing

12    shall be conducted at a time and a place which is reasonably

13    convenient to the parent and student involved and shall be

14    closed to the public unless the parent requests an open

15    hearing."

16    MR. ASHANTI:  Correct.  And the plaintiff here is

17    doing so under --

18    THE COURT:  Okay.  So he has requested an open

19    hearing.  But what I am saying is, aside from that, there is no

20    guidance as to what an open hearing is.

21    MR. ASHANTI:  Well, your Honor, it is specifically in

22    the statute.  It states, and I am reading from 34 CFR

23    300.512(c), "Parents involved in hearings must be given the

24    right to have the child who is the subject of the hearing

25    present, open the hearing to the public," your Honor, "and have

ib12donH

1    a record of the hearing with findings of fact and decisions,

2    described in paragraphs (a)(4) and (a)(5) of this section,

3    provided at no cost to parents."

4              And so what Mr. Donohue is entitled to, your Honor,

5    under the statute, is that it be open to the public.  We are

6    stating that is not just people who happen to have been there

7    present at the time, it is the public.  There are hundreds of

8    thousands of families who are similarly situated to

9    Mr. Donohue.  We have a few of them here, who were also present

10   at the proceedings on October 16, who can attest to the

11   discriminatory nature of the exercise of the discretion of

12   IHO Lloyd, which they are not entitled to have rulings that are

13   based on discriminatory grounds.  And so the public, that term,

14   "public," in that provision, your Honor, we are stating that

15   that means that there has to be some mechanism for the public

16   to have access to see really what goes on in --

17             THE COURT:  To see or to know?

18             MR. ASHANTI:  Well, to know, your Honor.

19             THE COURT:  And they can know --

20             MR. ASHANTI:  Without --

21             THE COURT:  -- from a transcript, they can know from

22   the press, they can know from those who are present.  And you

23   want me to go beyond that.

24             MR. ASHANTI:  Yes, because it doesn't capture

25   really -- my point, in pointing out that these other families

ib12donH

1    were present -- who were present are present who are today is

2    because they can attest to the fact that hearing the words and

3    looking at the transcript doesn't capture really the power of

4    the discriminatory grounds that --

5              THE COURT:  I'm sorry.  I'm sorry.  This is so

6    ephemeral and so speculative to me, "doesn't capture the

7    power."  "You gotta be there to see it."  I don't believe that

8    this is something that I am willing to encapsulate in the law

9    by making a ruling that you have to get everything that you

10   want, you have to have room for as many people as you want.  I

11   am sorry.  There are limitations.  It's got to be reasonable.

12             MR. ASHANTI:  Absolutely, your Honor, and we are not

13   taking issue.  The reason why I didn't come in here and the

14   first thing I said, well, the room that was given to the

15   plaintiffs is not big enough.  The reason is -- and I wasn't

16   hiding any information from your Honor -- is because what --

17   the accommodation that's been granted by having the courtroom

18   that's available at Borough Hall is sufficiently large at this

19   time, but that does not make it open to the public.  It's only

20   those persons who would be present on December 4 in that

21   particular courtroom open to the public, which is the reason we

22   want the video recording is, someone who is not present there,

23   someone who is in Arizona and is in the same position as

24   Mr. Donohue can look and potentially have access to see what

25   the proceedings are about and what goes on later at a point in

ib12donH

1    time -- at a later point this time.  That's the whole point of

2    it being a recording, your Honor.  So we are not saying that

3    everyone who wants to be there in the entire universe has to be

4    able to be given access.  We at this point in time take no

5    exception with the size of the physical location where the next

6    hearing is going to take place.  So that portion of it -- and

7    again, I would say that that actually supports our position

8    that we were correct in that.  We are not saying that the DOE

9    has made that concession, but I am saying that that is a

10   reasonable inference based upon those facts.  But the visual

11   piece, which would really give meaning to this term "public"

12   that's in --

13           THE COURT:  No.  If it meant visual, it would say

14   visual.  "Public" means accessible to the public, not

15   contemporaneously, it means that they have an ability to see

16   what has happened, either by reading a transcript, either by

17   being present, or by reading about it in the press.

18           MR. ASHANTI:  But your Honor used that term, and I

19   believe that that is very apropos, "to see what has happened"

20   later, after the fact.  They wouldn't have that opportunity

21   if --

22           THE COURT:  But what I am trying to say is that I am

23   no so sure that "open and public" means you have got to see

24   it --

25           MR. ASHANTI:  Okay.  Understood, your Honor.  But the

ib12donH

1    point being --

2          THE COURT:   -- when every other means of knowing what

3    happened is available to you.

4          MR. ASHANTI:   In addition to the fact that there has

5    been, you know, this pushback in terms of the A.G.'s office and

6    the DOE is the fact that there is not even notice to the

7    public.  So we are stating that we have provisions that support

8    the idea that when you have an open meeting that you have to

9    actually give notice to the public.  Otherwise, they won't know

10   what's going on.  And just --

11         THE COURT:  Stop.  Stop.

12         Let me hear from the city.

13         MR. THAYER:  This argument about notice is completely

14   out of left field.  This isn't in any of the papers --

15         THE COURT:  I know.

16         MR. THAYER:  And it is black-letter law.  It is in the

17   law.

18         MR. COONEY:  Respectfully, we have argued the same

19   point five times.  I mean, there is -- I don't know how much

20   more we can beat a dead horse here, respectfully.  I don't see

21   how they can convince anyone, as you said, any court, at this

22   juncture that "open" means audiovisual capability.  I don't see

23   it.  So --

24         MR. ASHANTI:  Your Honor, your Honor -- I apologize.

25   I apologize.

ib12donH

1              MR. COONEY:  I just --

2              MR. ASHANTI:  The -- what the AG's office has stated

3    is correct.  It is something that is -- and I believe the city

4    might have touched on it, as well.  It is stated in plain view,

5    in terms of the law, that New York State Public Officers Law,

6    Article 7, Section 103 and Section 104, support the idea of a

7    public notice.  Because without that --

8              THE COURT:  What do you mean support the idea?  Do

9    they decree it?  Do they demand it?  Is it stated clearly that

10   it has to be?

11             MR. ASHANTI:  Public --

12             MR. COONEY:  Your Honor --

13             MR. ASHANTI:  Public --

14             MR. COONEY:  Your Honor, I would object.

15             MR. ASHANTI:  -- define --

16             MR. COONEY:  These are all --

17             THE COURT:  Just a second.  I already told you that

18   only --

19             MR. COONEY:  Sorry, your Honor.

20             THE COURT:  -- one person at a time can talk.

21             All right.  Give him a chance.

22             MR. ASHANTI:  Certainly.

23             MR. COONEY:  This is really prejudicial to both the

24   city and the state.

25             THE COURT:  Getting new arguments for the first time

ib12donH

1  before me?

2          MR. COONEY:  Yes.

3          THE COURT:  I understand.

4          MR. COONEY:  We could doing this all day literally.

5          THE COURT:  I know, but we are not going to do it all

6  day.  We are not going to do it all day.

7          MR. ASHANTI:  Your Honor, this is not something that

8  the law is not a surprise -- it should not be a surprise to

9  anyone, right --

10          MR. COONEY:  Well, we are --

11          MR. ASHANTI:  -- so the idea of a -- what "public"

12  means, that implied in having something open to the public

13  means you have to give notice to the public?

14          THE COURT:  No, it doesn't.  There are specific things

15  that say you have to give notice.

16          MR. ASHANTI:  And we are citing one here, your Honor.

17          THE COURT:  As far as I know, there are no New York or

18  Second Circuit cases that recognize the right to audiovisual

19  capability in an IDEA hearing, and I am not going to start it.

20          MR. ASHANTI:  Your Honor, respectfully we respect that

21  position, your Honor, but we would just like to understand

22  that -- your Honor's statement about this case is correct in

23  that it is a position of first impression only because -- not

24  because the plaintiffs don't have the right to what's being

25  sought here, only because the plaintiffs are one of the few

ib12donH

1    that have ever even sought to enforce this right.  So this is a

2    right that just is sitting on the books that is collecting dust

3    that --

4            THE COURT:  But you are reading into what is sitting

5    on the books certain things that are not stated on the books.

6            MR. ASHANTI:  We believe that it is a reasonable

7    interpretation of the use --

8            THE COURT:  Reasonable interpretation --

9            MR. ASHANTI:  Of "public" for the public who is not

10   present at the time to be able to see what's going on at a

11   later -- through a video recording, your Honor.  In today's day

12   and age, especially, seeing something does not -- is

13   certainly -- is more than just reading about it your Honor.

14           THE COURT:  I know, but that's what I am saying.  It

15   is degrees, by degrees.  It is not to say that by reading about

16   it is not sufficient for a open hearing.

17           MR. ASHANTI:  We are just saying that today, in 2018,

18   that the baseline in 1940 is different than it is in 2018.

19           THE COURT:  Well, you know something?  This is part of

20   the problem.  In terms of process, federal courts don't have

21   cameras.  So what you want me to do is say while I can't have a

22   camera, I can order you to have a camera?

23           MR. ASHANTI:  Only because a general litigant in this

24   courtroom, your Honor, you know, a slip and fall with diversity

25   action, or any kind of federal case that gets adjudicated here

ib12donH

1   would not -- they don't have a right to that.  They don't

2   have -- there is no provision, federal statute that they could

3   point to to say, well, your Honor, respectfully, we are

4   asserting our rights under this federal statute that says your

5   Honor should grant access to the audiovisual media for the

6   proceedings in this courtroom.  Here it is different.  It is

7   distinguishable.

8          THE COURT:  Let me -- show me the section or the

9   statute or the regulation that says that you have to grant

10  audiovisual.

11         MR. ASHANTI:  Well, your Honor --

12         THE COURT:  No, no.

13         MR. ASHANTI:  -- it is 34 CFR 300.512(c).  It does not

14  specifically state that, your Honor, but what we are stating is

15  it is a reasonable interpretation of the use of the term

16  "public" in 2018, on November 1, 2018, that the public should

17  have visual access to the proceedings, that that is a

18  reasonable interpretation of that, your Honor.

19         THE COURT:  It is a novel interpretation based on

20  what's happened in precedent and through the years, and I'm not

21  saying that it's unreasonable, I'm not saying that it is

22  inappropriate, but I am saying that it is so out there in terms

23  of how these proceedings have been going, that I cannot say

24  that you are going to have a reasonable chance of succeeding on

25  the merits.

ib12donH

1          There is no record before me.  I keep saying this.

2   There is no record before me of what the ruling has been by the

3   IHO.  There is no record of what has happened with that ruling

4   that has gone to the SRO, and the SRO has not written an

5   opinion about that.  What I am saying to you is that it is

6   premature for you to come in here and talk about speculative

7   damage because people couldn't see it.

8          MR. ASHANTI:  Well, the damage would be to the

9   plaintiff, not to the public, your Honor.  Because it is the

10  plaintiffs' rights that we are seeking to vindicate here.

11         And there are really two tracks.  I understand your

12  Honor's point that this has not gone through -- the impartial

13  hearing is not concluded, the SRO has not reviewed it, but that

14  track is the normal adjudication track.  This track, it's

15  not -- we don't have the ability to go to an SRO for emergent

16  relief, and that's why we have exhausted --

17         THE COURT:  But what I am trying to say to you is, you

18  have no basis for emergent relief because there is nothing

19  before me factually that is going to determine or give me a

20  basis for making a ruling.  This is all what may happen, what

21  might happen.  And I also do not see any argument supporting

22  that the public has a visual right to access.  The public has a

23  right to access and it will have access either by attending,

24  either by reading the transcript, either by reading the press

25  coverage.  I am not going to say that constitutionally you have

ib12donH

1    a right to have audiovisual.

2              MR. ASHANTI:  Right, your Honor.  We are not asserting

3    the Constitution here.  It is strictly statutory.

4              But may the plaintiff be heard, your Honor.

5              THE COURT:  No.  He is represented by you?

6              MR. ASHANTI:  He is.  He is also counsel, your Honor.

7    He is also an attorney.

8              MR. COONEY:  I would object to that, your Honor.

9              THE COURT:  No, he is not.  He is not going to talk

10   today.

11             MR. ASHANTI:  Yes, your Honor.  Okay.  We understood.

12             Just to be clear, we are not seeking to vindicate any

13   rights under the Constitution.  We are just saying that this

14   federally guaranteed statutory right that due process demands

15   that because it is the plaintiff who is asserting it that the

16   default position should be an open forum in the manner that --

17             THE COURT:  That he specifically and individually

18   describes it so that --

19             MR. ASHANTI:  To the --

20             THE COURT:  -- so that when the next person comes,

21   that's going to control what happens?  So he --

22             MR. ASHANTI:  To the extent -- sorry, I apologize.

23             THE COURT:  You are asking for something that is too

24   speculative, too broad.  Based on what is before me now, what

25   has happened, is just beginning, there have been no formal

ib12donH

1    rulings, no final rulings, there is no basis for me to say I am

2    sure that you are going to be successful on the merits of

3    getting audiovisual coverage in addition to what is available:

4    the transcript, the press coverage, and members of the public

5    being able to attend in what is now an even bigger space.

6            MR. ASHANTI:  Your Honor, I would just say that the

7    rulings that IHO Lloyd made clear, they are not going to

8    change.  So to the extent there is any issue regarding the

9    finality of the rulings as it affects this case and the rights

10   of this plaintiff, that has been determined, your Honor.

11           And again, your Honor, you know, I understand your

12   Honor's point about the record, but we have the record, your

13   Honor.  We have the transcript.

14           THE COURT:  You have a part of, a beginning of a

15   record.  You have a transcript where he said one thing that you

16   do not like.  And what I am saying is that for me to say that

17   is a sufficient basis for me to rule in your favor would open

18   up the gates for any time at any point in any proceeding when

19   somebody doesn't like it to go running into court, and that is

20   not how it is supposed to be.

21           I am supposed to have a record from which I can make a

22   ruling.  I have no record here.  And the one thing that he

23   said, which he could change, it is not written in stone, it is

24   not a final ruling *per se*, is not a basis for me to say, yes,

25   you have to have audiovisual.

ib12donH

1        So I do not think that there is irreparable harm.  I

2   do not think that there is a chance of success on the merits.

3   I think that once there is a record, once we see what actually

4   happens, and you can bring that to the SRO and the SRO makes a

5   ruling, which may go in your favor, then there is a record for

6   a federal court to get involved.  We do not micromanage these

7   things.  If there was no public access at all, I think that I

8   could see your point.  But what I am saying is that there is

9   public access.  You just don't like it.

10        MR. ASHANTI:  Just very briefly, your Honor, to your

11   Honor's point of moving forward with other plaintiffs then

12   being able to assert what Mr. Donohue is asserting here, the

13   answer --

14        THE COURT:  No, it's not just what he is asserting.

15   I'm saying that once they say "an open hearing" and "to me

16   individually personally an open hearing is," that's the

17   problem.

18        MR. ASHANTI:  I think the bounds that your Honor is

19   really pointing out is an important issue, but the bounds, I

20   think, is what is reasonable.  So if someone were to say

21   something crazy or off the wall, then I would expect your Honor

22   or another judge to say no, to bat them down on that.

23        But here, with the definition of "public" meaning, in

24   terms of our interpretation -- and I believe it is a reasonable

25   interpretation --

ib12donH

1     THE COURT:  I don't believe it is a reasonable

2  interpretation, and I am ruling that way.

3     MR. ASHANTI:  Yes, your Honor.  Understood.

4     THE COURT:  So that I am denying the preliminary

5  injunction, which is the only issue that was before me.  So

6  that at this point I have made my ruling.  This record is the

7  basis for my ruling.  It is not to say at some later point,

8  when there is more that has happened, you might have a basis

9  for coming in and saying this was wrong or that was wrong.  But

10 I'm not going to tell the IHO or the SRO what they should do.

11 They are the ones who do what they are supposed to do; and

12 then, when it is finished and you don't like it or the city

13 doesn't like it, that's when I step in.  So at this point, I am

14 denying the request for a preliminary injunction.

15     You can take this.  I am ordering this on a daily

16 basis.  If you wish to appeal it, you have a right to appeal

17 it.  But that is my ruling.

18     MR. ASHANTI:  Thank you, your Honor.  Understood.

19     THE COURT:  This matter is adjourned.

20     MR. COONEY:  Thank you, your Honor.

21     MR. THAYER:  Thank you, your Honor.

22     THE COURT:  Please see the court reporter.

23                         oOo

24

25